IN THE MATTER OF THE AMERICAN PUBLISHING COMPANY, *in bankruptcy,* THE WESTERN PAPER COMPANY, THE WESTERN NEWSPAPER UNION AND MYRON BOYLE, *petitioners.*

(Filed February 11, 1905.)

1. **BANKRUPTCY—Pleadings.** In an action in bankruptcy, brought under subdivision 2 of section 3 of the act of bankruptcy, it is incumbent upon the respondent to deny the allegation in the petition of insolvency, and in case of a failure to do so, the allegation of insolvency is admitted.

2. **DUTY OF RESPONDENT TO APPEAR—Burden of Proof.** When a petition has been filed under the second subdivision of section 3 of the act of bankruptcy, and the respondent takes issue with and denies the allegation of insolvency, it is the duty of the respondent to appear in court on the hearing with its books, papers and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency, and in case of its failure to so attend and submit to an examination, the burden of proving solvency rests upon it.

3. **SAME—Duty not Performed, when.** Where a respondent corporation appears at the hearing by its president, who, with other witnesses, is examined, and certain books are produced, but neither the testimony of the witnesses nor the matters shown by the books disclose the financial condition of the respondent, such acts are not a compliance with subdivision D, of section 3, of the act of bankruptcy, which makes it the duty of the respondent to appear in court on the hearing with its books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency, the purpose of said action being to require the respondent to appear and give testimony from which the financial condition of the respondent can be ascertained.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before C. F. Irwin Trial Judge.*

*Shartel, Keaton & Wells,* for plaintiff in error.

*W. H. Criley,* for defendant in error.

*In re* American Publishing Co.

STATEMENT OF FACTS.

Proceedings in bankruptcy were commenced in the district court of Canadian county by the Western Paper Company, The Western Newspaper Union and Myron Boyle, asking that the American Publishing Company be adjudged a bankrupt because of an act of bankruptcy committed in the transfer by chattel mortgage of its property on October 21, 1901, when insolvent, and with the intent to prefer the creditors named in the mortgage over other creditors. The petition was in the usual form, setting up all the necessary facts showing that the debts owing were more than one thousand dollars, that the petitioning creditors claims were more than five hundred dollars, and the alleged act of bankruptcy, which consisted of giving a chattel mortgage while insolvent on a greater portion of its property, with the intent to prefer certain creditors over others, and after giving such mortgage, surrendering possession of the property to the mortgagees, who sold the property under the mortgage.

The American Publishing Company appeared and "denied that it had committed the act of bankruptcy." No denial was made of the allegation of insolvency. On the trial, the petitioners proved the allegations of their petition except the allegation of insolvency, and as to that allegation, they claimed it to be admitted under the pleadings, The court holding adversely to them on that proposition, they called the president of the company as a witness, together with others, to show the financial condition of the company, but failed, the president testifying that he had no knowledge of the financial condition of the company, and the witness who had possession of the books of the company testified that the books in his possession did not show the financial con-

dition; that he had had some reports which showed the condition, but after search made, he was unable to find them. The record shows affirmatively that there was no person present in court at the hearing with any books, papers or accounts which showed, or from which the financial condition could be determined. The court held the burden to be on the petitioners to show the insolvency of the company, and they failing to make such showing, refused to make an adjudication, and dismissed the proceedings.

Opinion of the court by

PANCOAST, J.: Two propositions are contended for upon which error is predicated: First, that the allegation of insolvency was not denied, and was therefore admitted; second, if the allegation of insolvency had been denied, it was still the duty of the respondent to appear in court on the hearing, with its books, papers and accounts, and submit to an examination, and give testimony as to all matters tending to establish its solvency, or insolvency, and in case of failure to so attend and submit to an examination, the burden of proving solvency rested upon the company; that the respondent in effect, failed to comply with the requirements of the law in this regard, and failed to prove its solvency, and therefore it should have been taken as confessed. The second act of bankruptcy mentioned, in order, as set out in section 3, of the act of bankruptcy, is in giving preference through transfers, and provides as follows:

"Acts of bankruptcy by a person shall consist of his having transferred, while solvent, any portion of his property to one or more of his creditors, with the intent to prefer such creditors over other creditors."

This was the section under which this action was brought. It is plain to be seen that two things, a condition and an act, must be shown in order that an action in bankruptcy may be maintained under this subdivision: First, that the alleged bankrupt has transferred a portion of his property to one or more creditors, with intent to prefer such creditors over other creditors; second, that such transfer was made while the alleged bankrupt was insolvent. The fact alone that a transfer is made is not sufficient, nor is the fact of the insolvent condition alone sufficient as a basis for the action. The two must concur and it is immaterial whether we construe the pleading in the light of the forms provided by the supreme court of the U. S. or in the light of the rules of equity pleading, as the same rule of construction obtains in each case.

The supreme court, however, has provided by rule 38 of the general orders in bankruptcy, that:

"D. These several forms annexed to these general orders shall be observed and used with such alterations as may be necessary to suit the circumstances of any particular case."

Form No. 6, in part provides:

"And now the said————————appears and denies that he has committed the act of bankruptcy set forth in said petition, or that he is insolvent, and avers that he should not be declared a bankrupt for any cause in said petition alleged."

By this form of answer, it is clearly intended that one or both of two positions may be taken in a defense to a petition in bankruptcy: First, the respondent may deny the act of bankruptcy alleged. This throws the burden upon the petitioners, and if they fail to prove the allegations of the petition in this regard, their action fails; or, second, the

respondent may admit the act complained of, but deny the insolvency when the transfer was made. This denial of insolvency also places the burden upon the petitioners, provided, however, that the respondent observes the requirements of the law, and brings its books, records and papers into court on· the hearing, and submits to the examination required. The answer in this case denied the act of bankruptcy, that is, the transfer of the property as alleged in the petition, but nowhere denied the insolvency of the respondent. It seems to us that by no rule of construction of pleadings can the answer in this case be held to contain a denial of the insolvency of the respondent at the time of the transfer of its property. The statutes and the forms applicable to this case seem to be quite clear. Cases may very readily arise where the respondent is in fact insolvent, but has committed no act of bankruptcy which would subject the respondent to the liability of being adjudged a bankrupt, under this subdivision, and cases may also arise where the respondent may readily admit the act charged as the act of bankruptcy, but successfully deny the insolvency.

The reason for the requirement of the statute and the language contained in the form of answer provided by the supreme court, seems apparent when it is considered that the acts of the alleged bankrupt and its financial condition are peculiarly within its knowledge. The object of the law, as well as of the orders and rules laid down by the supreme court, is to obtain the truth, both as to the acts of the alleged bankrupt and as to its financial condition. The purpose and object of the law cannot be subserved by allowing the respondent in such cases to hide behind technicalities. The acts and the conditions are intended to be and should be

exposed to the searchlight of truth.   Was the object and purpose of the law accomplished in this case?   We think not. Even had the respondent denied the insolvency, still, we think that it did not fully and fairly comply with provisions of the law, by appearing at the hearing with its books, papers and accounts and submit to an examination, and give testimony as to all matters tending to establish solvency or insolvency.   The answer admitted the making of the mortgage but claimed that it was given for a present consideration, and was not made with the intent to prefer one creditor over another.   The evidence   introduced,   however,   shows that to the extent of $7,000.00, the mortgage was for a present consideration, and that the remaining $5000.00 was for a past indebtedness, the effect of which was to prefer one or more creditors over others to the extent of $5,000.00.   It was also shown that the property mortgaged was practically, if not all, of the property owned by the respondent, and was estimated by one of the witnesses as being worth $12,000.00 to $13,000.-00, over and above the mortgages.   The record also shows that soon after the mortgage was given, the mortgagees took possession of the property and sold it under the mortgage, realizing about $8,000.00.   The property being purchased at the mortgage sale for the benefit of the mortgagees, was soon thereafter sold for about $6,000.00, and the principal proceeds of the sale used for the payment of the $5,000.00 of past indebtedness.

These last observations are probably not material here for any purpose other than to show the result of these transactions, and the effect which they had upon the property and the business of the respondent, and the resulting loss to the creditors.   Under the circumstances, what possible hope

could there be that the creditors would ever realize any amount upon their claims? None whatever.    The adjudication in bankruptcy is refused, the petition dismissed, the property of the respondent sold under the mortgage sale, the proceeds disbursed, and the petitioning creditors with no opportunity whatever to investigate the affairs of the company, much less to obtain payment or partial payment of their claims.

But is complained that the respondent did appear and comply with the law by bringing its books into court and submitting to an examination.   Now, it is true that the president of the company did appear in answer to a subpoena, and it is true that certain books were brought into court, and that the president did submit to an examination; but it is not true that he, or any one on behalf of the company, gave "testimony as to all matters tending to establish solvency or insolvency."   The president of the company testified that he had no knowledge of the financial condition of the company.    One witness testified that an expert had made statements which did show the financial condition of the company, but neither these statements nor the books from which they were made up were brought into court, and the record shows affirmatively that the books which were then in court did not show in any way the indebtedness of the company at any time.   And   the witness   who had   charge of the books testified that he knew of no books or papers of said respondent company except the books and papers which he then had in court, none of which showed or purported to show the financial condition of the company at the date of the mortgage, or any other time.

While under proper pleadings the burden is upon the petitioners to show the insolvency of the alleged bankrupt, yet the duty devolves upon the respondent not only to appear with books and papers, but to appear with such books and papers and submit to an examination and give testimony from which the solvency or insolvency of the alleged bankrupt can be ascertained. No conclusion whatever could be arrived at from the testimony in this case as to the solvency or insolvency of the respondent. Nothing was disclosed by the examination of the witnesses, or from an inspection of the books, papers and accounts. No light whatever was thrown upon the question under consideration. No aid was given the court, and no information given the petitioners from which the solvency or insolvency of the respondent could be determined. Had the books never been brought into court and had the president of the company and other witnesses never submitted themselves for examination, the court would have had as much light thrown upon the matters involved as it did after listening to the entire testimony submitted. This, we think, in effect, is a failure to comply with the statute, and upon such failure, the burden of proving the solvency of the respondent rested upon it.

For the reasons given, we think the trial court erred in its conclusion. The judgment of the court below is therefore reversed, with directions to the trial court to reinstate the case, and to grant the respondent permission to amend its answer, and deny the allegation of insolvency, if it so desires, and permission to appear with its books, papers and accounts and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency;

or upon failure to comply with either of these two provisions, that the respondent be adjudged a bankrupt.

Irwin, J., who presided in the court below, not sitting; Gillette, J., not sitting; Beauchamp, J., absent; all the other Justices concurring.